## In re GUARDIANSHIP OF CORCORAN.

(First Division.  Juneau.  January, 1907.)

No. 507A.

1. GUARDIAN AND WARD (§ 55*)—CARE OF ESTATE—LOSS—LIABILITY.
   Where a guardian in good faith and under the order of the probate court deposits funds belonging to his ward in a bank outside the territory, and such fund is lost by a failure of the bank during a financial stringency, the guardian is not liable for the loss.

   [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 254; Dec. Dig. § 55.*]

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

2. APPEAL AND ERROR (§ 911*)—REVIEW—PRESUMPTIONS—JURISDIC-
TION—PROBATE COURT.

　　Where the records of the probate court were destroyed by fire,
the district court will, on considering an appeal, presume that
the lower court performed the necessary acts to confer jurisdic-
tion.

　　[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig.
§ 911.*]

E. M. Barnes, for appellant.

Malony & Cobb, for respondent.

GUNNISON, District Judge.　This matter comes here on
an appeal from an order of the commissioner and ex officio
probate judge for the Sitka precinct, allowing and approving
the final account of George Kostrometinoff, as guardian of
the estate of John P. Corcoran, a minor.　Appellant excepted
to several items of the account as it was presented to and
allowed by the court below, upon numerous grounds, and now
asks this court for a decree that:

　　"Kostrometinoff, as such guardian, and his bondsmen pay unto
this court for the use and benefit of John P. Corcoran, and the estate
of James Corcoran, deceased, the sum of $8,539.33."

The items of the account which appellant asserts are im-
properly charged are as follows:

　　(1) The sum of $3,899.76, which was, under order of the
probate judge at Sitka, in November, 1892, loaned to the
Northwest Loan & Trust Company, of Oregon, with interest
thereon at 8 per cent. per annum.

　　(2) A charge of $30, due the Russian Orphanage at Sitka
for the board of appellant.

　　(3) The sum of $150, alleged by the guardian to be due the
Jetomir Cemetery in Russia; and

　　(4) $289.87, due to George Kostrometinoff for advance-
ments made by him during the period of his guardianship.

The court is of the opinion that the evidence taken upon the trial sustains the action of the guardian as to the last three items, and even appellant does not urge them in his brief submitted in the cause. He does, however, contend strongly for the disallowance of the first item, and upon several grounds, as follows: That respondent never filed any bond as such guardian; that respondent gave no notice of his application to the probate court for leave to deposit or invest certain guardianship funds; that the order directing the disposition of the fund was void, in that it did not appear that it was for the interest of all concerned, and also in that it directed that the money be sent out of the district; that respondent "loaned" the funds to the Northwest Loan & Trust Company, "not as guardian of the person or estate of any person, but in his own proper person, and intermingled with his own money as such loan"; that by said act respondent voluntarily placed said money out of the jurisdiction of the court; and that the order directing him to so do was made solely at his request, and upon his representations that the company was solvent.

Let us look at the facts as disclosed by the evidence. The parents of appellant died some time prior to 1892, leaving surviving four minor children, of whom appellant was the second eldest. Kostrometinoff was the executor of the estate of the mother, whose death occurred subsequent to that of the father. Rev. V. P. Drouskay, for a time after the mother's death, acted as guardian. During the period of his guardianship, one of the children died. Kostrometinoff settled up the estate as executor, and was discharged.

On April 25, 1892, Rev. Drouskay resigned, and on August 17, 1892, James Corcoran, the eldest of the children, then being 14 years of age formally requested the probate court to appoint respondent to the vacancy. This the court did, requiring respondent to give bond in the sum of $4,000. Here

there is a break in the records of the probate court, due to the destruction by fire of the old Baranoff Castle, at Sitka, on March 16, 1904. In this building were the offices and all the records of the commissioner and ex officio probate judge. The building was totally destroyed, and most of the public records of the district were burned in it. Respondent testifies that he duly qualified by giving a bond as directed by the order. His testimony is borne out by such records as we have before us, though neither the bond nor the order approving it are here. These were, according to the testimony, destroyed in the fire, and there is no evidence to contradict either its giving or its destruction. At the time respondent qualified there was in the estate a considerable sum of money. The probate court ordered this to be invested in real estate mortgages. On investigation, respondent found no suitable investments within the district. He thereupon petitioned the probate judge for a modification of the former order, so that he might deposit the fund in his custody in the Northwest Loan & Trust Company, of Portland, Or., in which institution the fund would be at interest. He at the time had funds of his own therein, and from inquiries made by him he was satisfied that the financial condition of the bank was good. On November 7, 1892, the order was made, at his request and upon his representations. In order that he might deposit an even amount, he put with the guardianship fund of $3,899.76 the sum of $100.24, taken from his individual means, and sent the $4,000 this made up to the Northwest Loan & Trust Company. The bank books show that the amount was deposited to the credit of "George Kostrometinoff, guardian," etc. On the 27th of July, 1893, while the fund was still on deposit, the bank went into liquidation; the failure being due to the financial panic of that year. The account shows diligent effort on the part of respondent to protect the fund, and to recover so much as possible from the wreck.

Two of the three surviving children died, leaving appellant sole heir to the estate. On July 31, 1905, appellant became of age and the guardianship of respondent closed; and on August 14, 1905, respondent filed his final account, and asked that it be approved and that he be discharged.

The records of the probate court in evidence here show that, from time to time during the guardianship, respondent filed an account, presented himself before the probate judge with his vouchers for an oral examination and an inspection of the accounts and the vouchers, and that each account was duly approved. The accounts and the evidence show a careful and painstaking administration of the trust. For the unfortunate dissipation of $36,000 of the trust fund in the failure of the Northwest Loan & Trust Company, no censure can attach to respondent. But is he, under the law, liable to his ward for that fund?

Appellant's first contention is not, we think, sustained by the evidence. As to the second, the duty of giving notice is imposed upon the probate judge, and not upon the guardian, by section 905, Code of Civil Procedure. No record of the proceedings leading up to and at the hearing of the guardian's application is to be had. The evidence showing conclusively their destruction subsequent to that time; and, therefore, the court, in the absence of proof to the contrary, will presume that the probate judge took the proper steps, even though his court be one of inferior jurisdiction.

The court cannot agree with the appellant's third contention. The cases cited go only to the authority of the guardian to collect assets found outside of the jurisdiction of the court appointing him, without his qualifying in the jurisdiction in which the assets are found. The cases are merely upon his authority to sue in another jurisdiction, and not to his power to invest the trust fund. That a guardian may invest trust funds, when it appears to be for the best interests of his

trust, and when he is duly authorized by the court to do so, outside of the jurisdiction in which he was appointed, is, we think, undoubted. The guardian cannot be required to exercise superhuman power in foreseeing what will occur in the future. All that can be required of him is good faith and the exercise of diligence, care, and prudence in the performance of his duties. That respondent did so is made clear by the testimony. Nor did he lose control of the fund. He might have withdrawn it from the company before the expiration of the year. The only consequence of that would have been the loss of the interest. In the absence of circumstances showing want of prudence, as in the case at bar, a trustee or guardian may properly invest funds in time certificates of deposits, and cannot be charged with the funds in case of loss by failure of the bank.

Appellant's fourth contention is that, because the word "as" was omitted between respondent's name and his title on the bank book, he must be held to have deposited the fund to his individual credit, and that he is therefore liable for the amount lost. It is true that the word "as," when preceding a word indicating a representative character, such as "guardian," means in the character of guardian; but the omission between the name and the word indicating representative character does not take away that character when that word is used. In other words, when the word "guardian" follows the name of the person acting in that capacity, he is deemed none the less a guardian because the word "as" has been omitted. The word denoting representative capacity or character, not the conjunction, is the important word.

Neither do we think that the addition of the $100.24 to the trust fund deposited or loaned to the bank was such a commingling of moneys, under the circumstances surrounding the deposit and the evident good faith of the guardian, as to render him liable under the rule as to the commingling of trust and individual funds.

Sixth. A guardian cannot be held liable for an act, where that act, even though not strictly within the lines of his duty, is expressly directed by the court, unless he.is guilty of bad faith and negligence in carrying out the direction of the court. There is no evidence of either here.

Our conclusion is, therefore, that respondent duly qualified as guardian, and that he acted with diligence, care, and prudence, and entirely within his authority, and the direction of the probate court. Hence he cannot be charged with the fund lost through the failure of the bank.

The appeal should be dismissed.